UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICKY LONGNECKER, <br> JESSIE BUNCIAGA, AND <br> IRAN SCOTT WINDOM <br><br> *Plaintiffs,* <br><br> v. <br><br> UNION PACIFIC RAILROAD <br> COMPANY <br><br> *Defendant.* | § § § § § § § § § § § § § | Case No. 4:23-cv-3069 <br><br> Judge Keith P. Ellison <br><br> Jury Requested |

## PLAINTIFF'S SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PLAINTIFFS, RICKY LONGNECKER, JESSIE BUNCIAGA, AND IRAN SCOTT WINDOM, and files this Second Amended Petition for cause of action against DEFENDANT, UNION PACIFIC RAILROAD COMPANY, who with respect, alleges as follows:

### I.     PARTIES

1.     Plaintiff RICKY LONGNECKER ("Plaintiff Longnecker") is a resident and citizen of Willis, Montgomery County, Texas. The last three numbers of Plaintiff Longnecker's Driver's License are 180 and the last three numbers of his Social Security Number are 926.

2. Plaintiff JESSIE BUNCIAGA ("Plaintiff Bunciaga") is a resident and citizen of Conroe, Montgomery County, Texas. The last three numbers of Plaintiff Bunciaga's Driver's License Number are 252 and the last three numbers of his Social Security Number are 769.

3. Plaintiff IRAN SCOTT WINDOM ("Plaintiff Windom") is a resident and citizen of Plantersville, Grimes County, Texas. The last three numbers of Plaintiff Windom's Driver's License are 718 and the last three numbers of his Social Security Number are 744.

4. Defendant, Union Pacific Railroad Company ("UPRR") is a railroad carrier providing railroad transportation throughout the State of Texas and the United States. Defendant Union Pacific Railroad Company is the successor in interest to the Missouri Pacific Railroad Company (MoPac) and the Missouri-Kansas-Texas Railroad Company (the KATY), The Defendant, UPRR, has been served and appeared in this cause of action.

## II.   JURISDICTION AND VENUE

5. Plaintiffs brought suit in state court and original Defendant Union Pacific Corporation, who was removed from this lawsuit by substitution, removed the lawsuit to federal court on the basis of diversity of citizenship pursuant to 28 USC §1332(a)(1). Such diversity of citizenship exists between all the Plaintiffs and Defendant UPRR. The amount in controversy exceeds $75,000.

6. Venue is appropriate in the Southern District of Texas, Houston Division, as many of the acts complained of, including the incident that is the basis of the action,

2

occurred in Harris County, Texas, which is within the Houston Division of the Southern District of Texas.

### III.   FACTS

7. In 1980, the Missouri Pacific Railroad (MoPac) was purchased by the Union Pacific Railroad Company (or its parent corporation) and merger into the Union Pacific Railroad began in 1982.

8. In 1988, the Missouri-Kansas-Texas Railroad Company (the KATY) was purchased by the Defendant Union Pacific Railroad (or its parent corporation) and was merged into the MoPac in 1989.

9. In 1997, the MoPac was officially merged into the Union Pacific Railroad Company.

10. The KATY owned rail line right-of-way, including tracks, rail structures, and bridges that travelled from Houston to Katy, Texas, along and parallel to the I-10 highway.

11. In 1992, the MoPac entered into a purchase and sale agreement with the Texas Department of Transportation. In that agreement, the MoPac retained the right to remove its railroad trackage and appurtenances under a "Retained Trackage Rights" provision.

> **Section 10.  Retained Trackage Rights.**
>
> Subject to the terms and conditions and for the time period specified in Exhibit G attached hereto and hereby made a part hereof, MP shall have the exclusive right to use the Property for the maintenance, operation, repair, renewal, reconstruction and removal of railroad trackage and appurtenances ("Retained Trackage Rights").

Plaintiffs' 2nd Amended Petition                                                                                          3

12.     In those retained trackage rights, the MoPac retained the exclusive right to continue to use the property including the tracks and bridges (among other trackage and appurtenances). MoPac specifically reserved the exclusive control, management, maintenance, and administration of the Tracks and Property.

13.     Pursuant to that same 1992 Purchase and Sale Agreement, in November of that year, the MoPac executed a Right of Way Deed Without Warranty, wherein the MoPac specifically excepted and reserved unto itself "[a]ll improvements owned by Grantor located on the Property, including, without limitation, all tracks, signals, bridges, switches, grade crossing materials, warning devices and any and all other trackage appurtenances but not including ballast and embankments."

14.     Pursuant to that same 1992 Purchase and Sale Agreement, in December of that year, the MoPac executed a quitclaim deed wherein the MoPac specifically excepted and reserved unto itself "[a]ll improvements owned by Grantor located on the Property, including, without limitation, all tracks, signals, bridges, switches, grade crossing materials, warning devices and any and all other trackage appurtenances but not including ballast and embankments."

15.     Further, the "Perpetual and exclusive easements for the reconstruction, maintenance, repair, renewal, construction and **removal of railroad trackage and appurtenances** were further identified as property originally being held by the KATY and, as of the date of the Agreement, reserved and held by Defendant UPRR.

> EXHIBIT  B   Page  1   of  2   Pages
>
> County:         Harris
> Highway:        Interstate Highway 10
> Project Limits: Katy-Fort Bend County Road in Katy
>                 to North Main Street in Houston
> CSJ:            0271-06-074
> Account No.:    4012-1-2
>
> FIELD NOTES FOR CENTERLINE OF 17 FOOT
> RAILROAD SAVE AND EXCEPT EASEMENT
>
> Being a centerline of a 17 foot save and except easement reserved by Union Pacific Railroad Company, situated in the John Reinerman Survey Abstract 642, Harris County, Texas, being part of that certain tract of land conveyed from Max Roy, et ux to Missouri, Kansas and Texas Railway Company, dated November 23, 1915, as recorded in Volume 351, Page 197, Deed Records of Harris County, Texas, out of that certain 17 acre tract conveyed from Eliza Roy, et vir to Missouri, Kansas and Texas Railway Company, dated January 23, 1902, as recorded in Volume 133 Page 204 Deed Records of Harris County, Texas, said 17 foot centerline easement being more particularly described by metes and bounds as follows:

16. Further, the Purchase and Sale Agreement and the right to retain such trackage included a provision that the Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns.

17. The Texas Department of Transportation purchased the subject right of way from the Defendant UPRR in 1998 and the KATY line was closed from Katy to Houston in 2000. The rail line was then removed by the Defendant in anticipation of the expansion of Interstate Highway 10.[1]

18. Based on information and belief, the Defendant UPRR removed the line and subject bridge structure in or around 2002. However, when the Defendant removed and demolished the subject bridge it failed to remove the entire bridge support structure, leaving portions of the metal bridge structure in the waterway, sometimes

---

[1] https://www.up.com/aboutup/train_town/katy_tx/index.htm

hidden from view depending upon the water level. This created a hidden danger to unsuspecting users of the waterway.



19. On April 26, 2022, Plaintiffs were operating a boat in the navigable waters of Langham Creek near Buffalo Bayou, west of the intersection of Interstate 10 West and North Eldridge Parkway, in Harris County, Texas.

20. Plaintiffs were working for the Harris County Flood District and were in the process of clearing debris from the Buffalo Bayou, starting near downtown Houston, and heading west toward the Addicks Reservoir.

21. After reaching the Reservoir, the Plaintiffs turned the boat around and began to head back toward downtown Houston when suddenly, and without warning, the Plaintiffs' boat struck the Defendant's bridge structure and steel beams that were left

6

hidden just below the water level, and by the Defendant UPRR when it removed and demolished the track and bridge.

22.  In demolishing the subject bridge, Defendant UPRR failed to remove the subject bridge and all of its elements from the navigable waters of Langham Creek. Specifically, Defendant UPRR left remnants of the subject bridge protruding from the bottom of Langham Creek, where they would pose obstructions to navigations and a hazard to persons operating watercraft in Langham Creek. These were the structures that impacted the boat Plaintiffs occupied at the time of the incident.



23.  The Plaintiffs were tossed within, and ejected from, the boat and suffered severe and permanent injuries as a result of the incident.

Plaintiffs' 2nd Amended Petition                                                                                          7

24. As a result of the impact between the boat and remnants of the subject bridge, Plaintiffs each suffered severe injuries and damages, all of which are complained of herein.

25. Plaintiff Longnecker suffered injuries to his neck, head, body, and the damages complained of herein.

26. Plaintiff Bunciaga suffered injuries to his head, shoulders, back, body and the damages complained of herein.

27. Plaintiff Windom suffered injuries to his right shoulder, right hip, right knee, abdomen, back, bowel, body, and the damages complied of herein.

28. The negligence acts and/or omissions of UPRR proximately caused the injuries to and damages sustained by Plaintiffs.

### IV. CAUSES OF ACTION

### Count 1 – NEGLIGENCE

29. All of the allegations contained in the previous paragraphs are realleged here.

30. Defendant, UPRR, is a common carrier and owes the public the highest duty under common law.

31. Defendant, UPRR, reserved unto itself total control of, and the right to remove, the track structures, appurtenances, and bridge that are the subject of this suit.

32. The Defendant undertook the activity of removing and demolishing the subject bridge and track structures.

33. This was an inherently dangerous activity.

34. The hazard created by the Defendant was foreseeable.

35. The Defendant had a duty to perform the task of removing and demolishing the subject bridge and track structures in a reasonably safe, and non-negligent, manner.

36. The Defendant breached its duty to foreseeable users of the waterway by creating a hazard where none existed before. Had the Defendant left the bridge structures visible to boaters and users of the waterway, there would have been no hidden hazard. However, by its negligent removal of only part of the bridge structure, the Defendant created a hazard. This was a failure in planning and/or supervision, which was a breach of the Defendant's duty to the Plaintiffs and boating public.

37. The Defendant further breached its duty by failing to completely remove the metal beams making up the bridge support structure from the waterway.

38. Further, the Defendant breached its duty by leaving a hidden danger in the subject waterway that was concealed from unsuspecting users, such as the Plaintiffs.

39. Further, the Defendant breached its duty by failing to warn unsuspecting users of the waterway, such as Plaintiffs, of the hidden danger created by the remaining bridge support structure.

40. The Defendant's breach of its duty was a proximate cause of the Plaintiffs' damages.

41. The Plaintiffs have been severely and permanently injured as a result of the Defendant's negligent acts.

**Count 2 – GROSS NEGLIGENCE**

42. All of the allegations contained in the previous paragraphs are realleged here.

43. The Defendants' conduct constitutes gross negligence as recognized under Texas law and Plaintiffs seek exemplary damages as allowed by Texas law and the Constitution, against Defendant.

44. The Defendant was aware of the need to remove the bridge structures but did so recklessly and in disregard of public safety.

45. Defendants' conduct, when viewed objectively from its standpoint at the time that it occurred, involved an extreme degree of risk, considering the possibility and magnitude of the potential harm to others. Furthermore, Defendant had actual, subjective awareness of the risk(s) but proceeded with a conscious indifference to the rights, safety, or welfare of others.

**V.   DAMAGES**

46. As a direct and proximate result of the negligence of Defendant UPRR, as set out above, Plaintiff Longnecker, Plaintiff Bunciaga, and Plaintiff Windom each suffered severe bodily injuries and damages as described above. Because of the nature and severity of the injuries, Plaintiff Longnecker, Plaintiff Bunciaga, and Plaintiff Windom each suffered the following elements of actual damages in the past, and Plaintiff Longnecker, Plaintiff Bunciaga, and Plaintiff Windom each will in reasonable probability suffer them in the future:

   a. Physical pain;

   b. Mental anguish;

    c.      Physical impairment;

    d.      Loss of earning capacity;

    e.      Reasonable and necessary expenses for medical treatment; and

    f.      Disfigurement.

Plaintiffs are suing Defendant UPRR for the full amount of their damages, as determined by a jury.

## VI.   JURY DEMAND

47.    Plaintiffs demand that this case be tried to a jury.

## VII.   PRAYER

WHEREFORE, Plaintiffs, Ricky Longnecker, Jessie Bunciaga, and Iran Scott Windom, demand judgment against Defendant, Union Pacific Railroad Company, for money damages for the injuries suffered as herein alleged, in an amount to be determined by the trier-of-fact, together with applicable interest, costs, and all other relief permitted by law.

Date: February 8, 2024                    Respectfully submitted,

**ROVEN CAMP, PLLC**

_/s/ Kevin M. Camp_
Kevin M. Camp
Attorney-in-Charge
Texas Bar No. 24064996
Fed. Id. No. 1092986
550 Westcott St., Suite 305
Houston, Texas 77007
Tel: (713) 465-8522
Fax: (713) 465-3658
kcamp@rovencamp.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this instrument has been sent to all parties and/or counsel of record in accordance with the Federal Rules of Civil Procedure on this the 8th day of February 2024.

Daniel J. Gibson
Union Pacific Railroad Company
24125 Old Aldine Westfield Rd.
Spring, Texas 77373
djgibson@up.com

_/s/ Kevin M. Camp_
Kevin M. Camp

12