**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **RICKY LONGNECKER, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:23-CV-03069** |
| | § | |
| **UNION PACIFIC CORPORATION, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM & ORDER

Before the Court is Defendant Union Pacific Railroad Company ("UPRR")'s Motion for Summary Judgment (ECF No. 47), as well as UPRR's three Motions to Strike (ECF Nos. 48, 52, and 53). The Court held a hearing on the Motions on April 27, 2026. For the reasons that follow, the Court now **GRANTS IN PART** Defendant's Motion to Limit Expert Testimony by Brian Huang (ECF No. 48) and Defendant's Motion to Strike Brian Huang's Declaration (ECF No. 53) and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 47). The Motion to Strike Steve Wittman's Declaration (ECF No. 52) is **DENIED AS MOOT**.

### I.   BACKGROUND

A complete discussion of the facts of this case, as alleged by Plaintiffs, is contained in this Court's Memorandum and Order on Defendant's Motion to Dismiss (ECF No. 34). The Court will briefly recite the relevant facts.

Plaintiffs Ricky Longnecker, Jessie Bunciaga, and Iran Scott Windom are employees of the Harris County Flood Control District. Pls.' Second Am. Compl. ("SAC") 1, ECF No. 28. On

April 26, 2022, they were clearing debris from the navigable waters of Langham Creek when their boat struck the remnants of a steel railway bridge. *Id*. at ¶ 19, 21. Plaintiffs were ejected from the boat and suffered serious injuries. *Id*. at ¶ 23–27. Plaintiffs allege that the steel beams in question were part of an old railway bridge previously owned and operated by Defendant UPRR, in its capacity as successor in interest to the Missouri Pacific Railroad Company.[1] *Id*. at ¶ 22.

Prior to 1992, Defendant owned and operated a rail line right-of-way extending from Houston to Katy, Texas, running parallel to Interstate Highway 10. Plaintiffs' Response ("Response"), ECF No. 50, at ¶ 2. That right-of-way included railroad tracks, rail structures, and bridge structures spanning waterways along the corridor, including a bridge crossing Langham Creek at the location where Plaintiffs were injured. *Id*. In 1992, the Texas Department of Transportation (TxDOT) purchased the real property on which the bridge is located from Defendant. Defendant's Exhibit A-1 ("Purchase Agreement"). The Purchase Agreement exempted from the sale "all improvements owned by [UPRR] located on the Property," including "all tracks, signals, [and] bridges. . ." Purchase Agreement at 7 (Section 1(b)). UPRR also reserved "the exclusive right to use the Property for maintenance, operation, repair, renewal, reconstruction, and removal of railroad trackage and appurtenances" ("Retained Trackage Rights") for a period of five years, that is, until 1997. *Id*. at 17 (Section 10); 47 (Exhibit G). Any tracks or other improvements not removed prior to termination of the Retained Trackage Rights would automatically become the property of TxDOT. *Id*. at 47.

The exact date on which the bridge in question was removed is unknown. Google Earth satellite images show that the bridge was removed sometime between 1995 and 2002. Response

---

[1] For the sake of clarity, the Court will use Union Pacific Railroad Company (UPRR) interchangeably with Missouri Pacific Railroad Company.

at ¶ 4-5. Plaintiffs allege that UPRR demolished the bridge during this period and that in doing so, it negligently failed to remove all of the bridge remnants from Langham Creek, "create[ing] a hidden danger to unsuspecting users of the waterway" that resulted in Plaintiffs' injuries some twenty years later. *Id*. at ¶ 18. Plaintiffs bring claims of negligence and gross negligence against UPRR.

At the summary judgment stage, Defendant has not challenged the contention that the bridge was removed negligently or that the Plaintiffs were injured as a result. Rather, Defendant argues that Plaintiffs have not produced sufficient evidence that UPRR was responsible for removing the bridge and that, even if there were such evidence, Plaintiffs' claims sound in premises liability rather than ordinary negligence.

## II.    MOTIONS TO STIKE

Before addressing Defendant's Motion for Summary Judgment, the Court will briefly address the Motions to Strike to the extent necessary to resolve the Motion for Summary Judgment.

The Court **GRANTS IN PART** Defendant's Motion to Limit Expert Testimony by Brian Huang (ECF 48) and Motion to Strike Brian Huang's Declaration (ECF 53). Mr. Huang is an engineering expert. He is undoubtedly qualified to testify about the incomplete removal of the bridge and to opine that the bridge was removed negligently. But his conclusion that Defendant UPRR, rather than TxDOT, was responsible for removing the bridge has nothing to do with his engineering expertise. Rather, it appears to be based on the contract between TxDOT and Union Pacific, Google Earth images, and emails between TxDOT and Plaintiffs' former counsel regarding the various contracts. Similarly, Mr. Huang's statement that the bridge was removed in 2002 is seemingly based only on Plaintiffs' complaint, rather than on his engineering expertise.

The Court therefore grants these Motions insofar as they seek to strike or limit the portions of Mr. Huang's testimony and declaration that offer an opinion as to which entity removed the bridge and in what year the demolition occurred. The other portions of his testimony and declaration will be considered.

Defendant has also filed a Motion to Strike Steve Wittman's Declaration (ECF 52). But because the Court finds that summary judgment in favor of Defendant is appropriate even considering the evidence put forward in Mr. Wittman's declaration, the Court **DENIES** this Motion as moot.

## III.    STANDARD OF REVIEW

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on

which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

## IV.   DISCUSSION

Defendant raises two related arguments in favor of summary judgment. First, it argues that Plaintiffs have not produced any evidence from which a jury could conclude that it was UPRR that removed the bridge. Second, Defendant argues that even if Plaintiffs can demonstrate that UPRR removed the bridge, their claims against UPRR sound in premises liability because UPRR was an owner or occupier of the property in question for premises liability purposes at the time that the alleged bridge removal occurred. Plaintiffs respond that (1) there is sufficient evidence from which a jury could conclude that UPRR was responsible for demolishing the bridge and (2) that their claims sound in ordinary negligence, rather than premises liability, because UPRR was more akin to a third-party independent contractor at the time of removal than an owner or occupier. It is undisputed that Plaintiffs cannot succeed if their claims against Defendants sound in premises liability, because Defendant was not the owner or possessor of the property at the time of Plaintiffs' injuries. *See Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 642 (Tex. 2016) (dismissing premises liability claim against prior owner arising out of dangerous condition of real property, "regardless of the previous property owner's role in creating the condition").

### A. Plaintiffs have produced sufficient evidence from which a jury could conclude that UPRR removed the bridge sometime between 1995 and 1997.

Viewing the evidence in the light most favorable to Plaintiffs, the Court agrees that there is sufficient evidence from which a jury could conclude that it was UPRR that removed the bridge.

Plaintiffs have produced Google Earth images showing that the bridge was removed between 1995 and 2002 and emails from the Texas Attorney General's Office in response to a Public Information Request which represent that TxDOT could not find any records showing that it hired a contractor to demolish the railroad bridge and that demolishing the bridge would not have been within the scope of its highway construction contract. *See* Plaintiffs' Exhibits 3 & 4 (Google Earth Images); Exhibit 2-A (TxDOT Correspondence). Plaintiffs also point to the Purchase Agreement, which states that Defendant maintained the exclusive right to use and access its tracks until the end of 1997, and several news articles from 1997—provided by Defendant—which state that (1) UPRR requested an extension of its Retained Trackage Rights in 1997 and TxDOT refused and (2) UPRR intended to finish removing its tracks by December of 1997. *See* Purchase Agreement; Defendant's Exhibits F-I (news articles).

Based on this evidence, a jury could reasonably conclude that UPRR demolished the bridge. But Plaintiffs have not pointed to any evidence suggesting that UPRR removed the bridge *after* 1997, as Plaintiffs initially plead in their complaint. To the contrary, the available evidence suggests that UPRR finished its track removal by the end of 1997, when its right to use the tracks and bridge and to access the property terminated. Indeed, in its briefing on the Motion for Summary Judgment, Plaintiffs state that UPRR "more likely than not removed the subject bridge in 1997 when it was removing its tracks." Response at 20. The Court will therefore assume that UPRR removed the bridge sometime between 1995 and 1997.

### B.  UPRR was a property owner for premises liability purposes until the end of 1997.

"[T]he application of premises liability to an injury arising from a property condition depends not on the nature of the condition, but on the party against whom liability is sought." *Arredondo v. Techserv Consulting & Training, Ltd.*, 567 S.W.3d 383, 391 (Tex. App.—San

Antonio 2018), *rev'd in part, aff'd in part*, 612 S.W.3d 289 (Tex. 2020). If the negligent party was a property owner or occupier at the time that it created the dangerous condition, premises liability principles apply. If the negligent party was a third-party contractor, ordinary negligence applies.

The key cases on this issue are *Strakos v. Gehring*, 360 S.W.2d 787 (Tex. 1962) and *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640 (Tex. 2016). In *Strakos*, the defendant was a third party who contracted with Harris County to remove fences along a roadway. 360 S.W.2d at 789. The contractor failed to refill the holes left by the fences and the plaintiff was injured when he later stepped into one of the holes. *Id*. at 788–89. The *Strakos* court concluded that the defendant-contractor could be held liable for this negligent work despite the fact that Harris County had "accepted" the work, rejecting the notion that the landowner's acceptance of the work immunized the contractor from liability. *Id*. at 790.

In *Occidental*, Occidental Chemical Corporation added an acid-addition system to a plant it owned in 1992, and later sold the plant to Equistar Chemicals, L.P. in 1998. 478 S.W.3d at 642. In 2006, the plaintiff was injured by the acid-addition system. *Id*. at 642–43. The Texas Supreme Court held that the plaintiff could not recover from Occidental, concluding that (1) "premises-liability principles apply to a property owner who creates a dangerous condition on its property," regardless of how the action is pled, and (2) "if an injury should occur after the condition's creator has conveyed the property, the premises-liability claim will, as a general rule, lie against the property's new owner." *Id*. at 648.

In other words, in order to overcome summary judgment, Plaintiffs must produce evidence from which a jury could conclude that UPRR was not the owner or occupier of the property for premises liability purposes at the time the bridge was removed, that is, between 1995 and 1997.

7 / 12

While the Court previously rejected the argument that Plaintiffs' claims sounded in premises liability at the motion to dismiss stage, this decision relied on Plaintiffs' allegation that UPRR removed the bridge in 2002—after UPRR's Retained Trackage Rights terminated in 1997. The Court emphasized that "[i]mportantly, when UPRR removed the bridge [in 2002], it did not own any of the rail line property." *Id*. at 5. In a footnote, the Court further noted: "At the hearing, Plaintiff argued that [the Purchase Agreement] merely states that UPRR retained property rights in the railway *until 1997*. . . The Court agrees with Plaintiff's reading of the contract." *Id*. at 5, n. 2 (emphasis added).

Defendant argues that UPRR's Retained Trackage Rights under the Purchase Agreement are decisive. Under the Agreement, UPRR retained "the exclusive right to use the Property for maintenance, operation, repair, renewal, reconstruction, and removal of railroad trackage and appurtenances" until the end of 1997. Purchase Agreement at 17. UPRR also retained ownership of the railroad tracks, including the bridge in question, during this period. *Id*. at 7. According to Defendant, these property rights constituted an interest in the real property sufficient to render UPRR a property owner or occupier rather than a third-party contractor for liability purposes, meaning that premises liability principles apply. This is consistent with the Court's (and Plaintiffs') assumption at the motion to dismiss stage.

While acknowledging that UPRR was not a third-party independent contractor like the defendants in *Strakos* and related cases, Plaintiffs argue that UPRR's role was that of a non-owning third party, as in *Strakos*, rather than a property owner, as in *Occidental*. In support, Plaintiffs rely on the undisputed fact that TxDOT, not UPRR, was the owner of the real property on which the tracks were located from 1992 onward. But this argument confuses property law and tort law. For purposes of tort liability, Texas courts look not only to whether a defendant was the owner of the

8 / 12

real property, but to whether the defendant exercised "sufficient control over the part of the premises that presented the alleged danger so that the defendant has the responsibility to remedy it." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 479 (Tex. 2017) (internal quotations omitted).

The Texas Supreme Court's discussion in *Occidental* is instructive. The court noted:

[A property] owner's duty. . . is rooted in its control over the property, which is to say premises liability. Such liability rests on two theoretical assumptions: (1) the property owner controls the premises and is therefore responsible for dangerous conditions on it, and (2) the property owner is in a superior position to know of and remedy the dangerous condition. Third parties, such as the owner's contractors or servants, may share that duty while they control the property, but, as *Strakos* recognizes, the duty of these third parties is not necessarily co-extensive with that of the property owner because "the modern approach is to place contractors on the same footing as manufacturers of goods and apply the same general principles of negligence even after the acceptance of the work." (quoting *Strakos,* 360 S.W.2d at 792). The contractor's duties are thus tied not only to its control of the premises but also to the quality of its contracted work. This latter duty may be judged under ordinary-negligence principles even after the contractor no longer controls the premises.

*Occidental Chem. Corp.*, 478 S.W.3d at 646–47. As this passage makes clear, the fact that the defendant in *Strakos* was an independent contractor hired by the property owner for a specific purpose is not merely happenstance, but rather was essential to the *Strakos* Court's holding. Indeed, the duty that was breached in *Strakos* was that which arose out of "the quality of [the contractor's] contracted work," not that which arose out of the contractor's control of the premises. Plaintiffs' argument that *Strakos* governs the liability of any third party who is not the owner of the real property is therefore misplaced.

9 / 12

Here, there is no evidence (and Plaintiffs have not suggested) that TxDOT hired UPRR as an independent contractor to remove the bridge in question.[2] Rather, UPRR retained the right to remove its tracks and bridges under the purchase agreement, together with the exclusive right to use the property in order to operate its railroad. There could be no question of TxDOT "accepting" UPRR's work because TxDOT never asked UPRR to do any work in the first place. Given that the central issue in *Strakos* was whether a property owner's acceptance of a contractor's work absolved the contractor from liability, the Court finds this distinction significant. In short, if UPRR removed the bridge in 1997, it did so for its own benefit in its capacity as an occupier exercising control over a property which it had the exclusive right to use for operation of its railroad tracks, not for the benefit of TxDOT in the capacity of an independent contractor. UPRR's Retained Trackage Rights clearly gave it control over the premises in question until the end of 1997. Given UPRR's property interest under the Purchase Agreement, the mere fact that UPRR did not own the real property on which the bridge was located does not transform it into an independent contractor that can be held liable under *Strakos*.[3] The Court therefore concludes that Plaintiffs' claims sound in premises liability, rather than ordinary negligence.

---

[2] In support of their argument that *Strakos* governs, Plaintiffs also argue that UPRR, though not an independent contractor, provided a benefit to TxDOT by removing its tracks, even if this benefit was gratuitous and not directly intended by the parties. But this likewise understates the importance of the *Strakos* defendant's status as an independent contractor hired by the property owner. The *Strakos* defendant had a duty arising out of its performance of its contractual obligations separate from its duty as a controller of the premises that is not present here.

[3] Plaintiffs cite to the Texas Court of Appeals' decision in *Arredondo v. Techserv Consulting & Training, Ltd.*, which, relying on *Strakos*, applied ordinary negligence principles to a claim against an independent contractor which was hired by a utility company to remove a utility pole and did so negligently. 567 S.W.3d 383, 393 (Tex. App.—San Antonio 2018), *rev'd in part, aff'd in part*, 612 S.W.3d 289 (Tex. 2020). But like *Strakos*, this case involved an independent contractor hired to perform specific work, not the holder of a right-of-way easement acting in its capacity as easement holder. Indeed, UPRR is more aptly compared not to the contractor in *Arredondo*, but rather to the utility company, which held a right of way easement on the property in question for

This conclusion is consistent with other Texas case law regarding premises liability. For example, in *United Scaffolding, Inc. v. Levine*, the Texas Supreme Court held that "a premises defect claim against a contractor who retained the right to control the premises at the time of the plaintiff's alleged injury must be submitted to the jury as a premises liability claim," rather than a general negligence claim. 537 S.W.3d 463, 480 (Tex. 2017). The court explained that "a general contractor that assumes control of or retains the right to control the premises is charged with the same duty as an owner or occupier" and that "a defendant's liability under a premises liability theory rests on the defendant's assumption of control of the premises and responsibility for dangerous conditions on it." *Id.* at 474 (internal citations omitted). The court noted that premises liability "merely require[s] 'sufficient control over the part of the premises that presented the alleged danger so that the defendant has the responsibility to remedy it,'" it does not require exclusive control over the premises. *Id*. at 479 (quoting *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). Notably, the court rejected the dissent's contention that *Strakos* should control. *Id*. at 478 n. 6. To the extent that this case is in tension with *Strakos*, the Court concludes that *United Scaffolding* better represents the Texas Supreme Court's current thinking, and in any event, the Court declines to extend *Strakos* beyond its application to independent contractors.

## V.   CONCLUSION

For these reasons, the Court therefore **GRANTS** Defendant UPRR's Motion for Summary Judgment. All the available evidence suggests that if UPRR removed the bridge, it did so before

---

the purposes of operating its utility poles. Additionally, although the Texas Supreme Cout affirmed the court of appeals' judgment as to the contractor's liability (while reversing other portions of the decision), the supreme court "express[ed] no opinion" on the portion of the court of appeals' analysis that dealt with the applicability of premises liability versus ordinary negligence, because the appellant did not raise this argument in its petition for review. *AEP Texas Cent. Co. v. Arredondo*, 612 S.W.3d 289, 293 (Tex. 2020).

the end of 1997.  The Court agrees with UPRR that, assuming the removal of the bridge occurred before the expiration of UPRR's Retained Trackage Rights, Plaintiffs' claims against UPRR sound in premises liability rather than ordinary negligence. And, Plaintiffs cannot succeed on a premises liability claim against UPRR because UPRR was no longer in control of the property at the time of Plaintiffs' injuries. While the Court recognizes that this holding makes it more difficult for Plaintiffs to seek redress for their injuries, the Court concludes that Plaintiffs' claims against UPRR are precluded by Texas law.

Because Plaintiffs cannot succeed on a negligence claim against UPRR, they likewise cannot succeed on their claim for gross negligence. Summary judgment is therefore entered in favor of Defendant.

**IT IS SO ORDERED.**

Signed at Houston, Texas on May 8, 2026.

Keith P. Ellison
United States District Judge